### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

**UNITED STATES OF AMERICA,**
    *Plaintiff,*

**v.**

**AKINDE THOMAS**
**CHALWELL,** *et al.,*
    *Defendants.*

Criminal No. 24-cr-00072 (MAJ)

### OPINION AND ORDER

## I.    Introduction

Before the Court is a Motion to Dismiss the Indictment filed by Jerome Nibbs, José Acosta, and Akinde Thomas Chalwell (collectively, "Defendants") (**ECF No. 32**), stemming from accusations of maritime drug trafficking (**ECF No. 1**).[1] Defendants allege that the U.S. Coast Guard violated federal law when it intercepted their motorboat by seeking a "jurisdictional waiver" from the British Virgin Islands ("BVI"), which they argue lacks sovereign authority to grant such permission rendering the action legally null. (**ECF No. 32 at 20, 5**). Additionally, Defendants challenge the procedural validity of their re-indictment after a previous case's dismissal, asserting this violates their due process rights and requires dismissing the Indictment with prejudice. *Id.* at 5-8.[2]

The Government's Memorandum in Opposition (the "Opposition") refutes Defendants' challenge to jurisdiction, arguing that the United States properly acquired jurisdiction pursuant to the provisions of the Maritime Drug Law Enforcement Act ("MDLEA"). (**ECF No. 33**). It also argued that under 46 U.S.C. § 70505 MDLEA,

---

[1]    Co-defendants Chalwell and Acosta filed Motions for Joinder, seeking to join and adopt the arguments and remedies in the Motion to Dismiss the Indictment. (**ECF Nos. 34, 35**). Co-defendant Chalwell's Motion for Joinder makes clarifications to the Motion to Dismiss the Indictment that will be addressed by the Court.

[2]    *United States v. Chalwell*, 22-cr-0340, 2024 U.S. Dist. LEXIS 35778 (D.P.R. Feb. 26, 2024).

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 2 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 2

Defendants cannot use non-compliance with international law as a defense. (**ECF No. 33**). Moreover, the Government argues that even if the interdiction took place within the territorial waters of the British Virgin Islands, the US-UK Bilateral Agreement allowed for such enforcement actions. *Id*. at 6.

Regarding the due process claims, the Government argues that the Court's prior dismissal without prejudice permitted a timely re-indictment within the statutory limits. *Id*. at 8. Accordingly, the Government contends re-indictment of Defendants two days after dismissal was appropriate and not in violation of their due process rights. *Id*. In short, the Government concludes that Defendants' Motion should be denied. *Id*. at 9. For the reasons detailed herein, the Court **DENIES** Defendants' Motion to Dismiss.[3]

## II.   Procedural Background

On July 28, 2022, Defendants were initially indicted for the same offenses before the Court wherein the Court denied their motion to dismiss. *United States v. Nibbs*, 643 F. Supp. 3d 299, 304 (D.P.R. 2022) (finding a 35-day delay in arraignment to be reasonable and holding that an alleged violation of the Vienna Convention was not grounds for dismissal of an indictment).

Next in, *United States v. Chalwell*, 2023 WL 6346107, Defendants again moved to dismiss the indictment, this time arguing that the Court lacked jurisdiction under the MDLEA by claiming that their vessel was detained in British Virgin Islands' territorial waters. *See United States v. Chalwell*, 22-cr-0340, 2023 WL 6346107, at *2 (D.P.R. Sept. 29, 2023). However, the Court denied the motion to dismiss, highlighting "the issue

---

[3]     In reaching this decision, the Court has reviewed the following: Criminal Complaint (**ECF No. 1**), Indictment (**ECF No. 11**); Defendants' Motion to Dismiss the Indictment (**ECF No. 32**); the Government's Memorandum in Opposition (**ECF No. 33**); Defendants' Reply to the Opposition ("Reply") (**ECF No. 46**); Co-defendants Chalwell and Acosta Motions for Joinder, (**ECF Nos. 34, 35, 47, 48**); and the Government's Sur-Reply (**ECF No. 59**).

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 3 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 3

presented here [is] a factual dispute as to whether the detention and arrest of the defendant occurred on the high seas or within the territorial waters of the British Virgin Islands." *Id.* Given this dispute over the location of the detention, the Court denied the Motion, noting a "'court must deny a motion to dismiss if the motion relies on disputed facts.'" *Id.* (citing *United States v. Stepanets*, 879 F.3d 367, 372 (1st Cir. 2018)).

Most recently, in *United States v. Chalwell,* 2024 WL 776487, Defendants' motion to dismiss focused on alleged violations of the Speedy Trial Act. *See United States v. Chalwell,* 22-cr-0340, 2024 WL 776487, at *1 (D.P.R. Feb. 26, 2024). There, the Court rendered a mixed decision, granting in part and denying in part Defendants' motion to dismiss based on speedy trial issues. *Id.* As a result, the indictment against Defendants was dismissed without prejudice. *Id.*

## III.   Factual Background

According to the Affidavit attached to the Criminal Complaint, on June 16, 2022, the U.S. Coast Guard ("USCG" or "Coast Guard") detected a "go-fast" boat in "the high seas" about 25 nautical miles from Saint Thomas, U.S. Virgin Islands, carrying three individuals and visible packages, raising suspicions of drug trafficking.[4] (**ECF No. 1-1 at 2**). A USCG ship, the "CGC HERIBERTO HERNANDEZ" intercepted the "go-fast" boat, during which the suspects jettisoned about 30 packages later confirmed as containing 90 kilograms of cocaine. *Id.* at 3-4.

The boat, which lacked navigational lights and showed no indicia of nationality, stalled and was boarded and controlled by the Coast Guard. *Id.* at 3. Pursuant to the

---

[4]      The Affidavit and written statements from the Government agents outline the facts underlying the Indictment. It is important to clarify that in citing these documents, the Court does not make any factual findings, nor does it accept these statements as inherently true. Instead, the Government's factual presentation is used solely to contextualize the pending Motion. *See USA v. Ruiz et al.*, 17-cr-00017 (S.D. Ala. Mar 16, 2017).

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 4 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 4

"United States/United Kingdom Overseas Territories (US/UKOT) bilateral agreement", the USCG contacted the United Kingdom Overseas Territories ("UKOT") which "confirmed registry of the vessel . . . and granted authority to board and search the vessel." *Id.* Subsequently, the "UK government waived . . . jurisdiction over the vessel, cargo and crewmembers" to the United States. *Id.*

Defendant Chalwell identified himself as the "master" of the boat and "made a verbal claim of British Virgin Islands ("BVI") nationality for himself and the vessel." (**ECF No. 1-1 at 3-4**).[5] The other two individuals aboard were identified as co-Defendants Acosta and Nibbs, BVI and Venezuelan nationals, respectively. *Id.* at 2-3. Defendants were apprehended, and their ship was towed to Saint Thomas, U.S. Virgin Islands. *Id.*

On February 28, 2024, a grand jury indicted Defendants for multiple drug-related offenses. (**ECF No. 11**). These offenses include Possession with Intent to Distribute Cocaine aboard a vessel within the jurisdiction of the United States, in violation of the MDLEA under 46 U.S.C. §§ 70503(a)(1), 70506(b). *Id.* at 2-3.

## IV.    Legal Standard and Applicable Law

### a.      Standard for Motion to Dismiss the Indictment

---

[5]      Co-Defendant Chalwell's Motion for Joinder asserts he never made a nationality or registry claim for the vessel; he was merely questioned about his nationality, last port of call, the vessel's destination, and his role on board. (**ECF No. 34 at 2**). It is well established that matters concerning the sufficiency of the evidence, the credibility of witnesses, and the resolution of factual disputes fall squarely within the jury's purview. *See United States v. Diaz-Colon*, 607 F. Supp. 3d 136, 145–46 (D.P.R. 2022). Accordingly, a motion to dismiss should not serve as a trial of the Government's evidence. *Id.*

Moreover, despite the factual disputes raised in Chalwell's Motion for Joinder, he fails to provide legal arguments as to how these disputed facts affect the instant Motion to Dismiss. The Court is "not a mind reader" and "a litigant has an obligation to spell out its arguments squarely and distinctly, or else forever hold its peace." *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990); *García-Díaz v. Cintrón-Suárez*, 14-cv-1354, 2017 U.S. Dist. LEXIS 18937, at *34 (D.P.R. Feb. 8, 2017). Undeveloped arguments not supported by legal authorities are deemed waived or abandoned. *United States v. Perez-Velazquez*, 488 F. Supp. 2d 82, 87 (D.P.R. 2007). While the Court is not obligated to consider disputed facts at this stage, especially without relevant arguments to that end, the Court will nonetheless discuss a portion of these disputed facts as it relates to the claim of nationality or registry.

A preliminary question is what the Court may properly consider in ruling on a motion to dismiss an indictment. *United States v. Young*, 694 F. Supp. 2d 25, 26–27 (D. Me. 2010)). Traditional civil motion practice is not generally available in criminal law, because unlike civil actions, criminal prosecutions are typically initiated by a grand jury, which is carrying out a constitutional function. *Id.* Thus, for purposes of a motion to dismiss, courts assume the truth of the indictment's allegations to determine if they inform the defendant of the charged offenses sufficiently, not to assess the sufficiency of the evidence. *United States v. Savarese*, 686 F.3d 1, 7 (1st Cir. 2012).

"Courts routinely rebuff efforts to use a motion to dismiss as a way to test the sufficiency of the evidence behind an indictment's allegations." *United States v. Diaz-Colon*, 607 F. Supp. 3d 136, 145–46 (D.P.R. 2022). Moreover, "motions to dismiss in criminal law are constrained by a defendant's constitutional right to a jury trial, so the Court cannot weigh factual findings that must be left for jury determination." *United States v. Young*, 694 F. Supp. 2d 25, 27 (D. Me. 2010). An indictment for an offense under the MDLEA is "generally sufficient" if it sets forth the elements of the offense "in the words of the statute." *Estupinan-Estupinan v. United States*, 10-cv-1318, 2011 WL 1707093, at *3 (D.P.R. May 5, 2011).

A defendant, "bears a heavy burden of establishing that particularized and factually based grounds exist to support . . . the dismissal of an indictment." *United States v. Jaafar*, 636 F. Supp. 3d 266, 268 (D. Mass. 2022) (citing *United States v. Rodriguez-Torres*, 570 F. Supp. 2d 237, 242 (D.P.R. 2008); *see also United States v. Troy*, 618 F.3d 27, 34 (1st Cir. 2010) ("[d]efendants challenging the sufficiency of an indictment bear a heavy burden."). The power to dismiss an indictment pursuant to Fed. R. Crim. P. 12(b)

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 6 of 22

Crim. No. 24-cr-0072 (MAJ)                                                                    Page 6

is "reserved for extremely limited circumstances" because it "directly encroaches upon the fundamental role of the grand jury." *United States v. Li*, 206 F.3d 56, 62 (1st Cir. 2000).

### b.   The Maritime Drug Law Enforcement Act

The MDLEA prohibits certain acts by persons "while on board a covered vessel," including possessing "with intent to manufactur[e] or distribut[e] a controlled substance." 46 U.S.C. § 70503(a)(1). "Covered vessel" is "a vessel subject to the jurisdiction of the United States." 46 U.S.C. § 70503(e)(1).

46 U.S.C. § 70502(c)(1) delineates when a vessel is "subject to the jurisdiction of the United States" including:

> (A) a vessel without nationality; (B) a vessel assimilated to a vessel without nationality under paragraph (2) of article 6 of the 1958 Convention on the High Seas; (C) a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States; (D) a vessel in the customs waters of the United States; (E) a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States; and (F) a vessel in the contiguous zone of the United States.

A vessel outside the recognized 12-mile limit of a nation's territorial seas is also a "vessel located within international waters" subject to the United States' jurisdiction under the MDLEA. *United States v. Martinez-Felipe*, 20-cr-0359, 2023 WL 5290124, at *7 (D.P.R. Aug. 17, 2023) (citing *United States v. Iona De Jesús*, 22-cr-20473, 2023 WL 3980082 at 3, 2023 U.S. Dist. LEXIS 103411 at 7-8 (S.D. Fla. May 4, 2023)). Moreover, a "nation's exclusive economic zone does not constitute territorial waters but rather remains part of the high seas." *United States v. Sanchez-Matos*, 20-cr-0316, 2023 WL 5088929, at *8 (D.P.R. Aug. 9, 2023) (internal quotations and citations omitted).

To establish a claim of nationality or registry, the MDLEA states that a claim of nationality or registry includes "(1) possession on board the vessel and production of documents evidencing the vessel's nationality . . . ; (2) flying its nation's ensign or flag; or

(3) a verbal claim of nationality or registry by the master or individual in charge of the vessel." 46 U.S.C. § 70502(e); *see also United States v. McElroy-Carlos*, 2022-cr-0011, 2023 WL 4420693, at *5 (D.V.I. July 10, 2023) ("the MDLEA itself recognizes each of these three methods—flags, papers, and verbal claims—to be proper methods of asserting nationality."). The "response of a foreign nation to a claim of registry" "may be made by radio, telephone, or similar oral or electronic means." *United States v. Mitchell-Hunter*, 663 F.3d 45, 50 (1st Cir. 2011).

Notably, the "response of a foreign nation to a claim of registry . . . is prov[en] *conclusively* by certification of the Secretary of State or the Secretary's designee." 46 U.S. § 70502(d)(2); *United States v. Sanchez-Matos*, 20-cr-0316, 2023 WL 5088929, at *4 (D.P.R. Aug. 9, 2023) (emphasis added). The First Circuit has held that "any further question about [the Department of State certification] is a question of international law that can be raised only by the foreign nation." *United States v. Cardales-Luna*, 632 F.3d 731, 737 (1st Cir. 2011). The certification establishes MDLEA jurisdiction despite the lack of information as to how or when the consent was obtained. *See United States v. Normandin*, 378 F. Supp. 2d 4, 8-9 (D.P.R. 2005).

Importantly, the U.S. Coast Guard boarding a ship first and obtaining foreign permission thereafter does not deprive the United States of jurisdiction. *See Cardales-Luna*, 632 F.3d at 737 (affirming conviction where Coast Guard boarded a suspect vessel before obtaining consent from Venezuela); *see also United States v. Alexis Gutiérrez-Moreno*, 615 F. Supp. 3d 97, 106 (D.P.R. 2022) ("defendants' argument fails even if the United States did, indeed, obtain post-seizure waiver of jurisdiction.").

Jurisdictional issues under the MDLEA are preliminary questions of law to be determined solely by the trial judge and do not constitute an element of the offense. 46

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 8 of 22

Crim. No. 24-cr-0072 (MAJ)                                                          Page 8

U.S.C. § 70504(a); *United States v. Davila-Reyes*, 84 F.4th 400, 405 (1st Cir. 2023); *United States v. Guerrero*, 114 F.3d 332, 340 n.9 (1st Cir. 1997) ("United States jurisdiction over vessels is no longer an element of an offense, but rather, a preliminary question of law for the trial judge."); *see also United States v. Gonzalez*, 311 F.3d 440, 447 (1st Cir. 2002) (Torruella, J., concurring) ("whether a vessel is within the jurisdiction of the United States for purposes of the MDLEA is a proper question for the judge, as it bears upon the right of the court to entertain the claim."); *United States v. Young*, 694 F. Supp. 2d 25 at 27 (quoting *United States v. Levesque*, 681 F.2d 75, 78 (1st Cir. 1982) (noting that "[w]hether the crime occurred in Indian country was thus a jurisdictional fact susceptible to determination without reference to any of the facts involved in determining defendants' guilt or innocence.")).[6]

Under the MDLEA, the government has the burden of establishing United States jurisdiction over a defendant by a preponderance of the evidence. *United States v. Puello-Morla*, 22-cr-0447, 2023 U.S. Dist. LEXIS 197411, at *4-5 (D.P.R. Nov. 1, 2023); *United States v. Cabezas-Montano*, 949 F.3d 567, 588 (11th Cir. 2020) (holding that the government bears the burden of establishing that the statutory requirements of MDLEA jurisdiction are met.).

## V.   Analysis

### a.   Standing

As a preliminary matter, the Government contests Defendants' standing to challenge MDLEA jurisdiction. (**ECF No. 34 at 4**). It argues that under the MDLEA, a defendant charged under § 70503 "does not have standing to raise a claim of failure to

---

[6]      MDLEA jurisdiction "in this context refers to the enforcement reach of the statute"— "not federal court subject-matter jurisdiction" — "which extends to any federal felony." *United States v. Rosario*, 17 F. Supp. 3d 144, 150 (D.P.R. 2014) (citing *United States v. Gonzalez*, 311 F.3d 440 at 443).

comply with international law as a basis for a defense," asserting that such claims may only be brought forth by a foreign nation. *Id*. Further, the Government posits that "failure to comply with international law does not divest a court of jurisdiction." *Id*.

Defendants' Reply clarifies they are asserting the Government violated its own domestic laws, not international law, in securing jurisdiction. (**ECF No. 46 at 2**).

The Government's position finds support in First Circuit precedent. As noted in *Cardales-Luna*, "any further question about [the Department of State certification] is a question of international law that can be raised only by the foreign nation." 632 F.3d 731 at 737. Thus, Defendants would lack standing to challenge the foreign nation's response.

To the extent, Defendants are attempting to argue that another sovereign should have exercised jurisdiction or waived it to the United States before boarding their vessel, this in effect boils down to an international law challenge. That is, Defendants are taking issue with the fact that Great Britan had not been contacted. Thus, even if we accept Defendants' premise that the BVI cannot stand in for Great Britain, that is a matter that Great Britain would need to raise as a violation of international law, not Defendants.[7] *See e.g., United States v. Maynard*, 888 F.2d 918, 927 (1st Cir. 1989) ("only Great Britain would have standing to challenge the United States for having violated international law, e.g. the 'Convention of the High Seas.'"); *United States v. Faris*, 23-cr-0392, 2024 BL 140164, at *4 (M.D. Fla. Apr. 24, 2024) (finding defendant's attempts to argue that "another sovereign — such as Venezuela, Dominica, or Great Britan — should instead exercise jurisdiction, . . . lack[s] merit" and has "been regularly rejected by higher courts, and do not divest the United States of jurisdiction"); *United States v. Diaz-Jaramillo*, 20-

---

[7]     Defendants state, the "United States Coast Guard violated United States law"— 46 U.S.C. § 70501-70508 — "when it contacted No Sovereign At All, i.e. The Attorney General of the British Virgin Islands, (Instead of Great Britain), to obtain a waiver of jurisdiction." (**ECF No. 32 at 4**).

cr-446-1, 2022 WL 17404925, at *2–3 (D.P.R. Dec. 2, 2022), *appeal di*s*missed,* 23-1017, 2023 WL 9016482 (1st Cir. Sept. 22, 2023), *cert. denied*, 144 S. Ct. 854 (2024) (noting under 46 U.S.C. § 70505, a defendant charged with a violation of the MDLEA does not have standing to raise a claim of non-compliance with international law; such a claim "may be made only by a foreign nation" and "does not divest a court of jurisdiction").

However, Defendants' Reply attempts to clarify that they are not asserting violations of international law, but rather, that the Government violated its own domestic laws in securing jurisdiction. (**ECF No. 46 at 2**). The First Circuit in *Maynard* held that a defendant had standing to challenge the district court's finding of MDLEA jurisdiction because the USCG had failed to contact BVI authorities before seizing his vessel. 888 F.2d at 927.

Accordingly, the Court finds Defendants have standing to challenge MDLEA jurisdiction to the extent they allege the Government violated the MDLEA when it boarded Defendants' vessel, along with the subsequent search, seizure, and arrest. *See Maynard*, at 927.

### b. Jurisdictional Challenge

i.  Defendants' Claim of No Sovereignty

Defendants argue that the United States Coast Guard's actions in contacting the Attorney General of the British Virgin Islands—instead of the sovereign state of Great Britain—to obtain a waiver of jurisdiction for the arrest was in violation of United States law, specifically 46 U.S.C. §§ 70501-70508. (**ECF No. 32 at 4**).

They contend that this action represents a "violation[] of the requirements for jurisdiction to board vessels on the high seas", asserting that the BVI, being "NO SOVEREIGN AT All" but rather "an overseas territory of Great Britain & Wales" could not

legally grant such permission. *Id.* at 4-5. Accordingly, they contend, any authority obtained by the Coast Guard to board Defendants' vessel was "legally null and void ab initio." *Id.* at 5.

The main thrust of the Government's Opposition contends "[t]he Court should deny defendants' motion because jurisdiction over the vessel was properly acquired." (**ECF No. 33 at 4**). As described previously, in *Chalwell*, the Court highlighted that a motion to dismiss the indictment cannot proceed when the motion is predicated upon disputed facts, emphasizing that "if the motion relies on disputed facts," it must be denied. *United States v. Chalwell*, 22-cr-0340, 2023 WL 6346107, at *2 (D.P.R. Sept. 29, 2023). The Government's Opposition reaffirms the Court's acknowledgement in *Chalwell*[8] that the alleged "location of the interdiction and subsequent arrest was . . . within the high seas." (**ECF No. 33 at 5**).

To begin, Defendants fail to substantiate their claim that the British Virgin Islands is "no sovereign at all" and thus incapable of waiving jurisdiction. (**ECF No. 32 at 4-5**). Defendants' attempt to back up their claim that BVI is "no sovereign at all" by citing to a government brief in an unrelated matter before the U.S. District Court for the Southern District of Florida. (**ECF No. 46 at 2**); *United States v. Andrew Alturo Fahie*, 22-mj-2719-JG (**ECF No. 8**). In that case, the government's filing—in relation to a sovereign immunity issue—states "[t]he Executive Branch of the United States Government does not recognize the British Virgin Islands as a sovereign state." *United States v. Andrew Alturo Fahie*, 22-mj-2719-JG (**ECF No. 8**).

---

[8]     In *United States v. Chalwell,* the Court noted, the "Government has provided its own evidence that the alleged violations of the MDLEA took place on the high seas and not in the territorial waters of the British Virgin Islands." 22-cr-340, 2023 WL 6346107, at *2 (D.P.R. Sept. 29, 2023).

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 12 of 22

Crim. No. 24-cr-0072 (MAJ)                                                                    Page 12

The Court finds little to no value in the government's filing *that* Defendants use to support their claim that BVI was incapable of waiving jurisdiction based on its territorial status. (**ECF No. 32 at 4-5; ECF No. 34 at 1; ECF No. 46 at 2-3**).[9] First, the government's brief in *Andrew Alturo Fahie,* is just that, a brief, it is not a court order or decision and therefore does not carry with it the weight of law. Secondly, and perhaps even more important, that case is not binding on this Court, and we find it has almost no persuasive value.

In fact, the First Circuit in *United States v. Maynard*, contradicts this assertion. 888 F.2d 918 (1st Cir. 1989). In *Maynard*, the Court allowed the defendant to challenge MDLEA jurisdiction because the U.S. Coast Guard had not contacted BVI authorities before seizing his vessel, despite the vessel flying a BVI flag and the defendant's likely verbal claim of BVI nationality. *Id*. at 925–27. This decision recognizes, at minimum implicitly, BVI's authority to grant or waive jurisdiction. *See Maynard*, at 925–26 (1st Cir. 1989) (finding undisputed facts included "at no time was Great Britain *or the British Virgin Islands* asked for a statement of 'no objection' to board" defendants' vessel) (emphasis added).[10]

Moreover, Defendants do not offer provisions of a bilateral agreement between the United States and "Great Britain" as they contend is the correct sovereign authority that

---

[9]     *See United States v. Francis*, 2008-cr-0007, 2008 U.S. Dist. LEXIS 101828, at *4-5 n.2 (D.V.I. Dec. 15, 2008) (highlighting defendant's motion "inaccurately refers to the British Virgin Islands as a sovereign country. The British Virgin Islands is in fact an overseas territory of the United Kingdom, the sovereign in question.").

[10]     Additionally, according to the Government of the BVI, "the British Virgin Islands are an internally self-governing overseas territory of the United Kingdom." Government of the Virgin Islands, Politics, BVI.GOV (2019), *https://bvi.gov.vg/politics.* "Ultimate executive authority in British Virgin Islands is vested in The King, and is exercised on his behalf by the Governor of the British Virgin Islands . . . Executive power is exercised by the (BVI) government . . . Military defence is the responsibility of the United Kingdom." Government of the Virgin Islands, About the Territory, BVI.GOV (2019), *https://bvi.gov.vg/content/about-territory*; Government of the Virgin Islands, Politics, BVI.GOV (2019), *https://bvi.gov.vg/politics.*

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 13 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 13

should have been contacted. (**ECF No. 32 at 4**). To the contrary, according to the general provisions of the U.S.-U.K. Bilateral Agreement concerning maritime matters, (hereinafter "U.S.-U.K. Agreement"), "the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland, *on its own behalf and on behalf of* the Governments of . . . *the British Virgin Islands* . . ." are subject to the agreement. *See* Agreement between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland Concerning Maritime Matters, U.S.-U.K., July 13, 1998, T.I.A.S. No. 00-1030. (emphasis added). To that end, Article 10 of U.S.-U.K. Agreement directly addresses operational jurisdiction in instances involving U.K. Overseas Territories ("UKOT"), including the BVI which states in relevant part:

> In all cases arising in UKOT territory, waters, or airspace, or concerning vessels registered in or flying the flag of a UKOT seaward of any State's territorial sea . . .  the UKOT shall have the primary right to exercise jurisdiction over a detained vessel, cargo and/or persons on board (including seizure, arrest, prosecution and forfeiture), provided, however, that the UKOT may, subject to its law, waive its primary right to exercise jurisdiction and authorise the enforcement of U.S. law against the vessel, cargo and/or persons on board. . . . Instructions as to the exercise of jurisdiction pursuant to this Article shall be given without delay."

*Id.*

In light of *Maynard* and the provisions of the U.S.-U.K. Agreement, it becomes evident the conclusory arguments regarding BVI's inability to grant jurisdiction to the U.S. Coast Guard are unsupported and contradicted. *See* (**ECF No. 32**); *Maynard*, at 925-927; Agreement Concerning Maritime Matters, U.S.-U.K., T.I.A.S. No. 00-1030 (July 13, 1998). Whether the BVI is a sovereign or "an overseas territory of Great Britain & Wales" as the Defendants contend is besides the question. (**ECF No. 32 at 4**). The inquiry here is whether, as Defendants put it, the British Virgin Islands could "legal[ly] grant such permission." The Court finds that it can.

ii.   <u>State Department Certification</u>

Defendants also question the Government's jurisdiction by challenging the State Department Certification. Relatedly, Defendants also claim the U.S. Coast Guard failed to obtain timely consent from a foreign sovereign before boarding their vessel on the high seas. Finally, Defendants dispute the factual basis of the Complaint and claim that "the captain of the vessel made no claim of registry of the boat." (**ECF No. 46 at 4**). They claim *United States v. Martinez*, a First Circuit opinion "fully supports" this challenge. (**ECF No. 46 at 2**); 640 F. App'x 18, 26 n.9 (1st Cir. 2016). That opinion is excerpted in Defendants' papers as follows:

> We can envision only one scenario, albeit a highly unlikely one, in which a defendant may have viable grounds on which to contest the contents of a certificate as they relate specifically to his claim of registry. Consider a defendant who maintains that although the certificate states that he made a claim of registry in Country X, he made a claim of registry in Country Y and the USCG then contacted the wrong nation. This unlikely scenario is the only one we can foresee in which a defendant would have a basis on which to challenge statements in the certificate describing his claim of registry. Such a challenge, to the extent that one was to arise, would be properly brought on the basis of the USCG's failure to comply with the substantive provisions of the MDLEA.

*United States v. Martinez*, 640 F. App'x 18, 26 n.9 (1st Cir. 2016).

In turn, the Government argues, even if the arrests occurred within the British Virgin Islands' territorial waters, Coast Guard action would still be sanctioned under the U.S.-U.K. Agreement, reinforcing the U.S.'s jurisdictional claim. (**ECF No. 33 at 6-7**).

The Government's Opposition states that on June 16, 2022, the BVI verified the vessel's registry and authorized the United States to board and search the vessel. *Id.* at 8. Then on June 28, 2022, the United States requested that the BVI waive its primary right of jurisdiction over the vessel, its cargo, and its crew. *Id.* Thereafter, on July 14, 2022, the

BVI agreed to waive its right to exercise jurisdiction and authorized the United States to enforce its laws against the crew members. *Id.*

In turn, Defendants reference Article 10 of U.S.-U.K. Agreement, and argue that the U.S. State Department certificate reveals a request made by the Government to the BVI on June 28, 2022, seeking a waiver of jurisdiction and such requests under Article 10 "should be made 'without delay.'" (**ECF No. 34 at 3**). However, the request was made 12 days after the interdiction, which Defendants argue "is another violation of U.S. law" and raises doubt that "the search, boarding and detainment of the defendants and their vessel were authorized by the claim[ed] sovereign on the day of interdiction." *Id.*

In *United States v. Barbosa-Rodriguez*, defendants charged with MDLEA drug offenses moved to dismiss, claiming the U.S. lacked jurisdiction "over the vessel at issue because . . . Britain's consent was received after the U.S. Coast Guard had already boarded." 680 F. Supp. 3d 121, 125 (D.P.R. 2023). The Court disagreed, noting the First Circuit has upheld MDLEA jurisdiction even when registry confirmation arrived five days post-boarding. *Id.* (citing *United States v. Mitchell-Hunter*, 663 F.3d 45, 50 n.7 (1st Cir. 2011) (cleaned up). The United States may establish jurisdiction "at any time prior to trial." *United States v. Sanchez-Matos*, 20-cr-0316, 2023 WL 5088929, at *4 (D.P.R. Aug. 9, 2023).

Here, even if no waiver from a foreign government had been in place before the USCG boarded Defendants' boat, the United States established jurisdiction, "prior to trial." *See Sanchez-Matos*, 2023 WL 5088929, at *4. According to the U.S. Department of State certification executed on December 13, 2022, the United States requested that the BVI waive its primary jurisdiction over the vessel, its cargo, and crew, on June 28, 2022. (**ECF No. 33-1 at 3**). On July 14, 2022, the BVI agreed and authorized the U.S. to enforce

its laws against the crew. *Id.* And on "August 9, 2022, the Government of the British Virgin Islands provided a Note Verbale to formally document its July 14, 2022 agreement to waive its right to exercise jurisdiction" and authorized the "United States to enforce its laws against the crew members . . . accordingly, the vessel is subject to U.S. jurisdiction under 46 U.S.C. § 70502(c)(1)." *Id.*

Here, the Department of State's certification asserting a foreign nation's consent "proves conclusively" MDLEA jurisdiction. *Sanchez-Matos*, 2023 WL 5088929, at *4; *see also United States v. Normandin*, 378 F. Supp. 2d 4, 8-9 (D.P.R. 2005); *see also Cardales-Luna*, at 737 (holding that the Secretary of State designee "need only certify that the foreign nation where the vessel is registered has consented or waived objection" to United States prosecution).

### iii.   Misplaced Reliance on *United States v. Martinez*

As previously noted, Defendants contend *Martinez* "fully supports" their jurisdictional challenge. (**ECF No. 46 at 2**). However, Defendants' reliance on *Martinez* is misplaced for two reasons. First, "it is an unpublished opinion" issued by the First Circuit. *United States v. Pinales*, 22-cr-0004, 2024 WL 665914, at *4 (D.P.R. Feb. 16, 2024). While instructive, the Court is not bound by such "unpublished dispositions" and puts little stock in its value. *See Pinales*, 2024 WL 665914, at *4 (declining to "put much reliance on *United States v. Martinez*," because according to First Circuit Local Rule 36.0(c), there is "no precedential value" in unpublished opinions, while Local Rule 32.1.0(a) and Fed. R. App. P. 32.1 allow for persuasive value.).

Second, under *Martinez*, the Court envisioned a presumably rare scenario, where a defendant could have grounds to challenge the contents of a State Department certification. *Martinez*, 640 F. App'x at 26 n.9. That scenario, which to be clear was not

Case 3:24-cr-00072-MAJ   Document 69   Filed 06/07/24   Page 17 of 22

Crim. No. 24-cr-0072 (MAJ)                                                                 Page 17

before the Court, effectively boils down to: when the defendant claims they made a registry claim in one country (Country Y), but the Coast Guard erroneously contacted a different country (Country X), defendant may challenge the certification for failure to comply with the MDLEA. *See id.*

However, as previously discussed, Defendants are not arguing that the Coast Guard contacted the wrong nation; instead, they contend that the British Virgin Islands is "no sovereign at all." (**ECF No. 32 at 4-5**). The Court notes that it would be inconsistent to permit Defendants to depend on *dicta* from *Martinez*, which pertains to a different argument (contacting the incorrect nation) than the one they present (failure to contact any sovereign). *Id*. Defendants are equivocating or falsely equating two different arguments. Therefore, the Court finds it incompatible for Defendants to rely on *Martinez* to support their distinct argument.

Even if the Court relies on Defendants' version of the facts, that "the captain of the vessel made no claim of registry of the boat", their jurisdictional challenge fares no better. (**ECF No. 46 at 4**). Under that premise, *Martinez*, which Defendants offer to this Court as precedential value, serves as a double-edged sword to Defendants' claims. The *Martinez* Court found that when a vessel has no markings, registration paperwork, or national flag, the only possible explanation for the U.S. Coast Guard's decision to contact a specific country's authorities—there Dominican Republic authorities—is a verbal claim of registry by the vessel's occupants. *Martinez*, 640 F. App'x at 26 n.9. Consequently, the *Martinez* Court concluded that the defendant's contention regarding the lack of a verbal claim was insignificant to his challenge to MDLEA jurisdiction. *Id*.

Case 3:24-cr-00072-MAJ    Document 69    Filed 06/07/24    Page 18 of 22

Crim. No. 24-cr-0072 (MAJ)                                                              Page 18

Indeed, if Defendants made no verbal claim of nationality, as they offer in their Reply,[11] their vessel would be considered "stateless" under the MDLEA, regardless of the *Martinez* ruling and invariably "subject to the jurisdiction of the United States." *See United States v. Aybar-Ulloa*, 987 F.3d 1, 6 (1st Cir. 2021); *United States v. Matos-Luchi*, 627 F.3d 1, 6 (1st Cir. 2010) ("stateless" vessel "subject to the enforcement jurisdiction of any nation on the scene.").[12]

Given the deficiencies in Defendants' Motion, the Court finds that it lacks merit and Defendants have failed to shoulder the "heavy burden" of establishing particularized and factually based grounds to support dismissal of the Indictment. *See United States v. Troy*, 618 F.3d 27 at 34; *United States v. Jaafar*, 636 F. Supp. 3d 266 at 268. Accordingly, the Court **DENIES** Defendants' Motion to Dismiss (**ECF No. 32**) and finds that the Government has proved by a preponderance of the evidence that there is U.S. jurisdiction over the Defendants' vessel under § 70502(d)(1)(C) and § 70502(d) of the MDLEA. *See Puello-Morla*, 2023 U.S. Dist. LEXIS 197411, at *4-5.

### c.    Due Process Claims

Defendants' Motion also alleges violations of their due process rights by way of labeling their re-indictment as a "new arrest" that unfairly duplicates proceedings for the same incidents, thereby breaching due process and the "Law of the Case" doctrine. (**ECF No. 32 at 5-7**). They argue this redundancy forms a "constitutional and factual anomaly,"

---

[11]    Defendants' Reply states, "The Captain of the Boat is preparing a Sworn Statement to the effect that no question was presented to him regarding the Vessel's Registry." (**ECF No. 46 at 4 n.1**).

[12]    Alternatively, Defendants also dispute the lack of indicia of nationality, instead, claiming their vessel was "displaying US Virgin Island Registration on the side." (**ECF No. 32 at 1**). However, as Defendants are aware the "problem with the defendants' argument is that it is not properly before the court on a motion to dismiss the indictment." *United States v. Chalwell*, 2023 WL 6346107, at *2. In *Chalwell*, 2023 WL 6346107, like here, Defendants are again attempting to raise a factual dispute, which the Court need not consider. *See United States v. Rodríguez-Rivera,* 918 F.3d 32, 35 (1st Cir. 2019) ("a district court may consider a pretrial motion to dismiss an indictment where the government ... does not dispute the pertinent facts.") (quoting *United States v. Musso*, 914 F.3d 26, 29–30 (1st Cir. 2019)).

demanding the dismissal of the instant case or "22-340" and either dismissal should be with "prejudice" to rectify these "procedural and legal missteps" and ensure the protection of their due process rights. *Id.* at 5-8. Defendants contend that categorizing their arrest as a "new arrest" rather than a "re-indictment" violates Speedy Trial considerations, the "Law of the Case" doctrine, and their Sixth Amendment rights, effectively amounting to double jeopardy by prosecuting the same offense in two cases based on the same facts. *Id.* at 5-8. They conclude that the "unprecedented act of rearresting the Defendants," combined with jurisdictional challenges, requires dismissal of the case with prejudice as a "matter of pure (technical) law." *Id.* at 8.

Defendants also argue that the current indictment should be dismissed due to procedural irregularities involving the grand jury. (**ECF No. 46 at 4-6**). They assert that the "swiftness" and "manner in which the prosecution obtained" the new indictment, "by mentioning the prior indictment," pose a "serious threat to the integrity of the judicial process," warranting the Court's exercise of its supervisory power to dismiss the indictment. *Id.* at 6.

The Government addresses Defendants' concern about being subject to two ongoing criminal cases by clarifying that the previous case's dismissal without prejudice permits the re-indictment of the defendant for serious drug-trafficking offenses, adhering to legal standards and the statute of limitations. (**ECF No. 33 at 8**). Moreover, the Government asserts, Defendants allege "that the case was presented to an expired Grand Jury and/or overzealous prosecution was involved in the re-indictment. Neither is true. The government properly re-indicted defendants after Criminal Case 22-340 [was] dismissed without prejudice." (**ECF No. 59 at 3**).

The Court finds Defendants' due process claims to be an amalgamation of disjointed legal theories, lacking in clarity and most importantly, merit. In essence, Defendants argue that their re-indictment and categorization as a "new arrest" violate due process, the "Law of the Case" doctrine, and their Sixth Amendment rights. (**ECF No. 32 at 5-8**). However, the relevant case law suggests otherwise.

In *Cardales*, the First Circuit established that due process is satisfied as long as the prosecution under the MDLEA is not arbitrary or fundamentally unfair. *United States v. Cardales*, 168 F.3d 548, 553 (1st Cir. 1999); *United States v. Barnes*, 159 F.3d 4, 17–18 (1st Cir. 1998) (holding the "Speedy Trial Act" does not bar "reprosecution" after a dismissal without prejudice, particularly when there is "no reason to believe that reprosecution would otherwise have a deleterious effect on the fair and efficient administration of justice."); *see also Sandstrom on Behalf of Sandstrom v. Chemlawn Corp.*, 727 F. Supp. 676, 678 (D. Me. 1989), *aff'd sub nom. Sandstrom v. ChemLawn Corp.*, 904 F.2d 83 (1st Cir. 1990) ("neither the doctrine of res judicata nor the law of the case applies where a case is dismissed without prejudice.").

Here, Defendants' claim that their reprosecution violates due process is unsupported. The re-indictment followed after the previous case was dismissed without prejudice, and there is no indication that reprosecution would adversely impact the fair and efficient administration of justice. *See United States v. Barnes*, 159 F.3d at 17–18.

Furthermore, dismissal of the previous case without prejudice and subsequent re-indictment does not equate to double jeopardy. *See United States v. Suazo*, 14 F.4th 70, 74-76 (1st Cir. 2021) (confirming "dismissal without prejudice is not an adjudication on the merits" and thereby "flatly reject[ing] the argument" that jeopardy should attach

"under the guise of a double jeopardy claim" as no such doctrine under double jeopardy law exists.).

Finally, the Court rejects Defendants' assertions that the indictment against them should be dismissed due to procedural irregularities involving the grand jury. Defendants have failed to meet the "heavy burden" required to overcome the "presumption of regularity" in grand jury proceedings. *See United States v. Flemmi*, 245 F.3d 24, 28 (1st Cir. 2001) (noting "courts afford grand jury proceedings a presumption of regularity" and this "presumption attaches even after the grand jury has returned an initial indictment.").

Defendants have provided no evidence to support their bald speculative claim that the Government mentioned the prior indictment to the grand jury. Defendants' speculation of irregularities in the grand jury proceedings, without supporting evidence, is insufficient to meet the "heavy burden" required to overcome the "presumption of regularity" afforded to grand juries. *See United States v. DeVincent*, 632 F.2d 147, 154 (1st Cir. 1980) (finding "appellant produced no evidence whatsoever" thus he "failed to overcome the strong presumption of regularity accorded to the findings of grand juries.") (internal quotations and citations omitted).

In short, an indictment that is valid on its face is not subject to challenge on the grounds that the grand jury acted on the basis of inadequate or incompetent evidence, as Defendants attempt to do here. *See Costello v. United States*, 350 U.S. 359, 364 (1956) (finding "[n]o persuasive reasons" why the Court should "exercise its power to supervise the administration of justice in federal courts and establish a rule permitting defendants to challenge indictments on the ground that they are not supported by adequate or competent evidence."). Accordingly, the Court **DENIES** Defendants' Motion to Dismiss the Indictment based on due process grounds.

## VI.    Conclusion

For the reasons set forth above, the Court **DENIES** Defendants' Motion to Dismiss the Indictment based on their jurisdictional challenges under the MDLEA and their due process claims.

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 7th day of June 2024.

*/s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDÁN**
**UNITED STATES DISTRICT JUDGE**