### THE UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | |
| *Plaintiff*, | |
| **v.** | Criminal No. 24-cr-00072 (MAJ) |
| **AKINDE THOMAS CHALWELL,** *et al.*, | |
| *Defendants*. | |

### OPINION AND ORDER

## I.    INTRODUCTION

Pending before the Court is the United States' Motion for Pre-Trial Determination of Jurisdiction (the "Motion"). (**ECF No. 71**). The United States (the "Government"), requests that the Court make a pre-trial determination confirming that the vessel involved in this maritime drug smuggling case falls under the jurisdiction of the United States, pursuant to the Maritime Drug Law Enforcement Act ("MDLEA"), 46 U.S.C. §§ 70501 *et seq*.[1]

The alleged crew of the vessel, Jerome Nibbs, Thomas Akinde Chalwell, and Jose Acosta ("Defendants"), oppose the Government's Motion and have filed an Opposition in response (the "Opposition") and replies to the Government's papers. (**ECF Nos. 74, 77, 81, 91, 92, 93**).[2] Having reviewed the filings from both parties and the Court's previous rulings, the Court **GRANTS** the Government's Motion for the reasons set forth below.[3]

---

[1]    As previously detailed, Defendants have been charged under the MDLEA for violations of 46 U.S.C. §§ 70503(a)(1), 70503(a)(2); 70506(b); and 21 U.S.C. § 960(b)(1)(B), 18 U.S.C. § 2. (**ECF Nos. 11, 69**).

[2]    In addition to their Motion, the Government has submitted filings rebutting Defendants' objections. (**ECF Nos. 85, 104**).

[3]    The Court declines Defendants' invitation to hold a hearing on the "disputed facts" relating to a pre-trial determination regarding jurisdiction over Defendants' vessel. (**ECF No. 74 at 2**). The decision of "whether to conduct an evidentiary hearing is left to the sound discretion of the district court," subject to

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 2 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 2

Additionally, after the parties submitted their filings regarding jurisdiction, Defendants filed a separate Motion for Reconsideration (**ECF No. 107**) aimed at the Court's previous Opinion and Order that denied their Second Motion to Dismiss the Indictment. (**ECF No. 106**). For the reasons stated below, the Court **DENIES** Defendants' Motion for Reconsideration. (**ECF No. 107**).

## II.    BACKGROUND

### a.  Procedural History

On March 22, 2024, Defendants filed their first Motion to Dismiss, arguing the Government failed to establish jurisdiction over their vessel under the MDLEA. (**ECF No. 32**). This Court, after thorough consideration, denied the motion, concluding that the Government had established jurisdiction under the MDLEA by a preponderance of the evidence. (**ECF No. 69 at 18**). Subsequently, Defendants submitted a second Motion to Dismiss, once again challenging the Government's jurisdiction, this time on constitutional grounds. (**ECF No. 75**). The Court denied this motion as well. (**ECF No. 106**).

The Government has now moved the Court to make a pre-trial determination of jurisdiction, consistent with the MDLEA's directive that "jurisdictional issues arising

---

review for abuse of discretion. *United States v. Brown*, 621 F.3d 48, 57 (1st Cir. 2010) (citing *United States v. Calderon*, 77 F.3d 6, 9 (1st Cir. 1996)). The test for whether an evidentiary hearing is required is whether the defendant made "a sufficient threshold showing that material facts were in doubt or dispute." *United States v. Vilches-Navarrete*, 523 F.3d 1, 15 (1st Cir. 2008) (citing *United States v. Panitz*, 907 F.2d 1267, 1273–74 (1st Cir. 1990). A defendant seeking an evidentiary hearing must "allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Sampson*, 01-cr-10384, 2015 WL 7962394, at *5 (D. Mass. Dec. 2, 2015) (citing *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000)).

Here, Defendants have not offered any evidence to put any of the material facts regarding jurisdiction in doubt. *See United States v. Mitchell-Hunter*, 663 F.3d 45, 53 (1st Cir. 2011). Moreover, Defendants have not alleged facts with "definiteness, clarity, and specificity," as their Opposition simply requests "a hearing on the disputed facts before a pretrial determination of jurisdiction is made." (**ECF No. 74 at 2**); *see United States v. Sampson*, 2015 WL 7962394, at *5.

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 3 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 3

under [the MDLEA] are preliminary questions of law to be determined solely by the trial judge." 46 U.S.C. § 70504(a); *see United States v. Bravo*, 489 F.3d 1, 6 (1st Cir. 2007); *see also United States v. Mitchell-Hunter*, 663 F.3d 45, 50–51 (1st Cir. 2011) ("the MDLEA's jurisdiction determination is relegated by statute to a pretrial conclusion of law by the judge.").

 b. <u>Factual Background</u>

As previously detailed by this Court, on June 16, 2022, the U.S. Coast Guard intercepted Defendants' "go-fast" vessel—which lacked navigational lights and any indicia of nationality—on the high seas, about 25 nautical miles from Saint Thomas, U.S. Virgin Islands. (**ECF No. 69 at 3-4**). Defendant Chalwell, claiming to be the master of the boat, asserted British Virgin Islands nationality for himself and the vessel. *Id*. 3-4.

As this Court previously found:

> [a]ccording to the U.S. Department of State certification . . . the United States requested that the BVI waive its primary jurisdiction over the vessel, its cargo, and crew[.] [Thereafter,] the BVI agreed and authorized the U.S. to enforce its laws against the crew . . .. [A]ccordingly, the vessel is subject to U.S. jurisdiction under 46 U.S.C. § 70502(c)(1) . . . [and] the Department of State's certification asserting a foreign nation's consent 'proves conclusively' MDLEA jurisdiction.

*Id*. With these findings in mind, the Court now turns to whether the Government has established MDLEA jurisdiction so that it may be resolved before trial.

## III. APPLICABLE LAW REGARDING MDLEA JURISDICTION

46 U.S.C. § 70502(c)(1) outlines when a vessel is "subject to the jurisdiction of the United States" including:

> (A) a vessel without nationality; (B) a vessel assimilated to a vessel without nationality under paragraph (2) of article 6 of the 1958 Convention on the High Seas; (C) a vessel registered in a foreign nation if that nation has consented or waived objection to the enforcement of United States law by the United States; (D) a vessel in the customs waters of the United States;

Case 3:24-cr-00072-MAJ     Document 156     Filed 08/12/24     Page 4 of 22

Crim. No. 24-cr-0072 (MAJ)                                                   Page 4

(E) a vessel in the territorial waters of a foreign nation if the nation consents to the enforcement of United States law by the United States; and (F) a vessel in the contiguous zone of the United States.

A vessel outside the recognized 12-mile limit of a nation's territorial seas is also a "vessel located within international waters" subject to the United States' jurisdiction under the MDLEA. *United States v. Martínez-Felipe*, 20-cr-0359, 2023 WL 5290124, at *7 (D.P.R. Aug. 17, 2023) (citing *United States v. Iona De Jesús*, 22-cr-20473, 2023 WL 3980082 at 3, 2023 U.S. Dist. LEXIS 103411 at 7-8 (S.D. Fla. May 4, 2023)). Moreover, a "nation's exclusive economic zone does not constitute territorial waters but rather remains part of the high seas." *United States v. Sánchez-Matos*, 20-cr-0316, 2023 WL 5088929, at *8 (D.P.R. Aug. 9, 2023) (internal quotations and citations omitted).

Jurisdictional issues under the MDLEA "are preliminary questions of law to be determined solely by the trial judge" and do not constitute elements of the offense. 46 U.S.C. § 70504(a); *United States v. Davila-Reyes*, 84 F.4th 400, 405 (1st Cir. 2023); *United States v. Pinales*, 22-cr-0004, 2024 WL 665914, at *4 (D.P.R. Feb. 16, 2024); s*ee e.g.*, *United States v. Guerrer*o, 114 F.3d 332, 340 n.9 (1st Cir. 1997) ("United States jurisdiction over vessels is no longer an element of an offense, but rather, a preliminary question of law for the trial judge."); *United States v. González*, 311 F.3d 440, 447 (1st Cir. 2002) (Torruella, J., concurring) ("whether a vessel is within the jurisdiction of the United States for purposes of the MDLEA is a proper question for the judge, as it bears upon the right of the court to entertain the claim."). Under the MDLEA, the government has the burden of establishing jurisdiction over a defendant by a preponderance of the evidence. *United States v. Puello-Morla*, 22-cr-0447, 2023 U.S. Dist. LEXIS 197411, at *4-5 (D.P.R. Nov. 1, 2023).

## IV.    MDLEA JURISDICTION ANALYSIS

### a.    Jurisdictional Determination

Defendants first contend that "jurisdiction should not be determined as a simple matter of pre-trial procedure, with no bearing on the interest of the defendants." (**ECF No. 74 at 2**). However, binding precedent says otherwise.[4] As the U.S. Court of Appeals for the First Circuit noted, "MDLEA's jurisdiction provision . . . is not concerned with a defendant's interests at trial, but instead with the rights of governments, determined by a judge prior to trial." *United States v. Mitchell-Hunte*r, 663 F.3d 45 at 51;[5] *see also United States v. Nueci-Peña*, 711 F.3d 191, 199 (1st Cir. 2013) (rejecting argument that the Sixth Amendment right to confrontation applies to pre-trial MDLEA jurisdictional proceedings, emphasizing that such determinations do not involve questions of guilt or innocence.).

Next, Defendants argue that the U.S. Coast Guard must make a specific inquiry to either the master or captain of the vessel as to its nationality, which Defendants contend, did not occur in the present matter. (**ECF No. 91 at 2**). Defendants state that "the U.S Coast Guard boarding team never asked any questions as to nationality of the vessel itself . . . [and instead] [o]nly [inquired] about the 3 occupants." *Id*. Defendants argue this

---

[4]    The distinction between fact-finding and sufficiency review is important because stare decisis "deals only with law." *United States v. Cardales-Luna*, 632 F.3d 731, 734 (1st Cir. 2011) (citing *United States v. Reverón Martínez*, 836 F.2d 684, 691 (1st Cir. 1988)). "[E]ven the narrowest conception of stare decisis demands that two panels faced with the same legal question and identical facts reach the same outcome." *See* 18 James Wm. Moore *et al*., Moore's Federal Practice § 134.03[1] (3d ed. 2010) ("At a minimum, stare decisis extends to the result reached by the prior authoritative decisions."). While the U.S. Supreme Court might have the casual legal observer think that the concept of stare decisis is a relic of a bygone era, *see Loper Bright Enterprises v. Raimondo*, 144 S. Ct. 2244, 2306 (2024) (Kagan, J., dissenting) ("abandoning *Chevron* subverts every known principle of *stare decisis*") here, the Court strictly adheres to the concept of stare decisis.

[5]    The *Mitchell-Hunter* Court did note that while MDLEA jurisdiction "is not concerned with a defendant's interests at trial," that "is not to say that a defendant does not have an interest in the court having proper jurisdiction over him, or that a defendant does not have the right to contest such jurisdiction. The burden of establishing jurisdiction remains with the government." *Mitchell-Hunter*, 663 F.3d 45 at 53 n. 8.

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 6 of 22

Crim. No. 24-cr-0072 (MAJ)                                                      Page 6

inquiry is necessary to determine which nation to contact for verification, or to deem the vessel "stateless" if no response is given. *Id*. Consequently, they contend that by not asking about the vessel's nationality, the U.S. Coast Guard failed to follow the strict mandates of the MDLEA, effectively invalidating jurisdiction. *Id*.

In *United States v. Vélez-Acosta*, the Eleventh Circuit reviewed whether the district court "erred in finding that it had jurisdiction because the [d]efendants were not asked to give a nationality for their vessel as required by the MDLEA." *United States v. Vélez-Acosta*, 22-cv-13528, 2024 U.S. App. LEXIS 4504, at *1 (11th Cir. Feb. 27, 2024). At trial before the district court, the defendant argued that the Coast Guard needed to request the vessel's nationality to establish jurisdiction, and the evidence was unclear on whether this request occurred. *Vélez-Acost*a, 2024 U.S. App. LEXIS 4504, at *1-5. Specifically, a Coast Guard officer testified that he asked if anyone aboard the defendant's vessel wanted to claim nationality for the vessel, and no one responded. *Id*. However, a right-of-visit form indicated that the defendants were asked to make a nationality claim for the vessel, and one of the defendants claimed Ecuadorian nationality. *Id*.

Despite these discrepancies, the district court concluded that either scenario sufficed to establish jurisdiction. *Id*. More specifically, if a defendant claimed Ecuadorian nationality for the vessel and the foreign government could neither confirm nor deny this claim, jurisdiction was established. *Id*. Conversely, if no nationality was claimed, as a U.S. Department of State Certification and officer's testimony suggested, this too established jurisdiction. *Id*. The Eleventh Circuit upheld the district court's findings and affirmed its judgment on all issues. *Id*. at *2.

Analogously, here, when asked by Coast Guard officers, Defendant Chalwell claimed British Virgin Islands nationality for "himself and the vessel." (**ECF No. 1-1 at**

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 7 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 7

**3**). Thereafter, the BVI's initial response consenting to the Coast Guard boarding and subsequent State Department certification—"conclusively" evidencing BVI's waiver of jurisdiction—establish the Coast Guard's ability to assert jurisdiction over Defendants and their vessel. (**ECF No. 69 at 3-4**); *see United States v. Cardales-Luna*, 632 F.3d 731, 737 (1st Cir. 2011) (cleaned up) ("a certification is conclusive").

At the same time, *even if* no one claimed nationality, under that scenario, the vessel would be rendered stateless under the MDLEA, and therefore "subject to the jurisdiction of the United States." *United States v. Matos-Luchi*, 627 F.3d 1, 6 (1st Cir. 2010) (A "stateless" vessel is "subject to the enforcement jurisdiction of any nation on the scene."); *see also Velez-Acosta*, at \*3-5.[6]

Given these precedents and persuasive authority, the Court finds that the State Department Certification provided by the Government is sufficient to prove, conclusively, that the Government of the BVI waived its primary right to exercise jurisdiction over Defendants' vessel, cargo, and crew. *See* (**ECF No. 33-1**); *United States v. Marcano-Hernández*, 19-cr-0776, 2020 WL 1030728, at \*3 (D.P.R. Mar. 3, 2020). Accordingly, the Government has established U.S. jurisdiction over Defendants' vessel under 46 U.S.C. § 70502(c)(1).

b.    *Brady* Violation and Constitutional Challenges

In addition to the above-mentioned arguments, Defendants' Reply in Response to the Government's Motion also raises arguments previously addressed by this Court. (**ECF**

---

[6]    The Court emphasizes that this discussion is for thoroughness, not a factual determination. Defendants have failed to provide evidence supporting their challenges to the verbal nationality claims, the vessel's location at interdiction, or any other jurisdictional disputes. Despite repeated pledges to provide material—including a "Sworn Statement" that the "Captain of the Boat" had not been asked about the vessel's registry (**ECF No. 46 at 4 n.1**) and an "affidavit" denying nationality had been confirmed by the "master of the vessel" (**ECF No. 91 at 2**)—Defendants have not produced either of the pledged materials.

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 8 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 8

**Nos. 69, 106**). These arguments, which have already been thoroughly examined and rejected, include challenges to MDLEA jurisdiction based on the vessel's location, alleged lack of verbal claim of nationality regarding the vessel, assertions about contacting the "correct sovereign," and the constitutionality of the MDLEA on its face and as applied to Defendants. *Id.*; *see* (**ECF No. 91 at 2-4**). Accordingly, the Court will not revisit these arguments.

Defendants now present a new contention not previously entertained by this Court, alleging a *Brady* violation. As established in *Brady v. Maryland*, 373 U.S. 83 (1963), the Government here, bears the obligation to disclose exculpatory evidence that is "material either to guilt or to punishment." Defendants' novel argument regarding a *Brady* violation is devoid of merit.

Specifically, Defendants assert that the flight tracker "of the U.S Coast Guard Aircraft, CG 2317, was destroyed, pre-trial by the U.S. Coast Guard in violation of *Brady v. Maryland*, because it is exculpatory evidence in the government's possession [not] disclosed to defendants." (**ECF No. 91 at 2**). Defendants argue this evidence would show that they were within "BVI territorial waters" when apprehended by U.S. authorities. *Id.*

The Government disagrees. (**ECF No. 104**). Instead, it contends that the flight plan of the U.S. Coast Guard aircraft "is not discoverable [per] Fed. R. Crim. P. 16(2)." *Id.* at 2. And regardless, according to the Government, the "U.S. Coast Guard aircrafts engage in a unique mission set that does not lend itself to pre-planning[,] nor do they fly traditional flight paths. U.S. Coast Guard policy requires neither the creation nor the retention of a flight plan/flight track for law enforcement missions (among other missions)." *Id.* at 2.

The Court finds no merit in the assertion that the alleged destruction of the U.S. Coast Guard flight plan constitutes a *Brady* violation or a due process violation. From the outset, the record here lacks any indication that the evidence in question ever existed, let alone destroyed. Therefore, Defendants' theory more closely aligns with a due process claim that the Government failed to preserve evidence. *See United States v. Esquilin-Montañez*, 268 F. Supp. 3d 314, 316 (D.P.R. 2017) (finding *Brady* inapplicable because there was no indication from the record that the evidence in question had been destroyed.").

In order for Defendants to demonstrate a due process violation due to the Government's alleged failure to preserve evidence, Defendants must satisfy the three-part test. *See United States v. Esquilin-Montañez*, 268 F. Supp. 3d 314 at 316 (citing *Arizona v. Youngblood*, 488 U.S. 51 (1988); *California v. Trombetta*, 467 U.S. 479 (1984); *United States v. Garza*, 435 F.3d 73 (1st Cir. 2006)).

Under this three-part test, Defendants must show, first, that the evidence possessed an "exculpatory value that was apparent before the evidence was destroyed." *United States v. Marshall*, 109 F.3d 94, 98 (1st Cir. 1997). Second, that the evidence "must be of such nature that the defendant[s] would be unable to obtain comparable evidence by other reasonably available means." *Id.* Finally, that the Government acted in bad faith in destroying the evidence. *Id*.

Here, Defendants have not met their burden of proof. *See United States v. Ossai*, 485 F.3d 25, 28 (1st Cir. 2007) (citing *United States v. Femia*, 9 F.3d 990, 994 n.8 (1st Cir. 1993) ("A defendant who asserts a due process claim based on the government's failure to preserve evidence . . . "bears the burden of proof.")). Defendants have not demonstrated that the flight plan possessed apparent exculpatory value at the time of its

alleged destruction, or that it would significantly contribute to their defense. *See Marshall*, 109 F.3d 94 at 98. Indeed, as previously discussed, the opposite is true. U.S. authorities would still have jurisdiction to enforce the MDLEA against Defendants pursuant to the U.S. State Department certification, even if Defendants were apprehended in BVI territorial waters.

Even if Defendants' theory regarding the destruction or failure to maintain the flight plan occurred—which this Court is certainly not crediting—this would have no bearing on their blameworthiness or culpability. Said differently, their *Brady* challenge is no *Brady* challenge at all. The Government's duty to disclose exculpatory evidence is aimed at material concerning guilt or punishment, not jurisdiction. *See United States v. Esquilin-Montañez*, 268 F. Supp. 3d 314, 316 (D.P.R. 2017) (under *Brady* the government has a duty to disclose exculpatory evidence which is "'material either to guilt or to punishment.'") Jurisdictional issues under the MDLEA, do not affect a defendant's blameworthiness or culpability. Defendants' so-called *Brady* challenge fails to qualify as such. Accordingly, the Court need not delve any deeper into Defendants' speculative theory regarding the alleged missing or destroyed evidence.

Finally, though the instant motion concerns a pre-trial determination of jurisdiction, rather than a Motion to Dismiss the Indictment, Defendants find this an opportune moment to present additional constitutional challenges to their Indictment. Specifically, Defendants argue, ". . . the Piracies and Felonies clause of the U.S. Constitution, does not apply within the territorial waters of any foreign nation." (**ECF No. 91 at 2**).

Defendants also argue, "that the MDLEA was enacted before the [United Kingdom Overseas Territories ("UKOT")] Ship-rider MOU under the Necessary and Proper Clause"

and "Congress has not approved and enacted UKOT-MOU Ship-rider of 1998 . . . to supersede the [MDELA's] requirement[] to contact the correct sovereign, in this case Great Britain." *Id.* at 3.[7] By extension, they claim that "[i]f the vessel was in international waters when interdicted" this amounts to a "expo-facto" [sic] violation of their "constitutional protections." *Id.*

Both arguments are summarily rejected by the Court. As to the first argument, according to U.S. Const. Art. I, § 8, cl. 10., Congress has the authority to "define and punish Piracies and Felonies committed on the high Seas, and Offenses against the Law of Nations." Courts in this Circuit and District have found the MDLEA to be a legitimate exercise of congressional authority under the Piracies and Felonies Clause. *See United States v. Díaz-Doncel*, 990 F. Supp. 2d 163, 164 (D.P.R. 2014) (citing *United States v. Nueci-Peña*, 711 F.3d 191 at 198 (finding "that the MDLEA is a 'constitutional exercise of Congress' power under the Piracies and Felonies Clause' of Article I of the Constitution."). This Court will not stray from such mandatory wisdom.

---

[7]        It is becoming increasingly apparent that Defendants are either neglecting to read or willfully ignoring the opinions issued by this Court in relation to this proceeding. The same arguments, which have been thoroughly discussed and rejected by the Court, persist in their filings. As mentioned, Defendants state that, under the MDLEA's "strict requirements" the Government should have "contact[ed] the correct sovereign, in this case Great Britain." (**ECF No. 91 at 3**). Defendants repeat this erroneous contention notwithstanding the Court issuing a lengthy twenty-two page Opinion and Order addressing and rejecting this very contention. *United States v. Chalwell*, 24-cr-00072, 2024 U.S. Dist. LEXIS 104066, at *16 (D.P.R. June 7, 2024). Among the Court's analysis regarding Defendants' failure to contact the "correct sovereign" theory, the Court noted:

> Defendants fail to substantiate their claim that the British Virgin Islands is 'no sovereign at all' and thus incapable of waiving jurisdiction.

> Whether the BVI is a sovereign or 'an overseas territory of Great Britain & Wales' as the Defendants contend is besides the question. . . . [t]he inquiry here is whether, as Defendants put it, the British Virgin Islands could 'legal[ly] grant such permission.' The Court finds that it can.

> [*United States v. Maynard*] recognizes, at minimum implicitly, BVI's authority to grant or waive jurisdiction. [888 F.2d 918 (1st Cir. 1989)].

*Id.* at 10-16. Defendants are hereby warned that continued disregard for this Court's decisions will not be looked upon favorably.

As to Defendants' second constitutional challenge, which amounts to an *ex post facto* challenge, this too is without merit. The prohibition against *ex post facto* laws, enshrined in Art. I, § 9, cl. 3., of the U.S. Constitution is designed to prevent the retroactive application of criminal laws to conduct that was legal when committed. *See United States v. Reid-Vargas*, 14-cr-0747, 2015 WL 2092925, at *8 (D.P.R. May 6, 2015) (quoting *Weaver v. Graham*, 450 U.S. 24, 29 (1981) ("[t]o qualify as ex post facto, a law 'must be retrospective, that is, it must apply to events occurring before its enactment.'").

Here, Defendants' alleged conduct occurred well after the enactment of the MDLEA in 1986. *See United States v. Reid-Vargas*, 2015 WL 2092925, at *8 (rejecting the defendant's *ex post facto* challenge noting the defendant "allegedly engaged in drug trafficking aboard a stateless vessel well after the MDLEA was enacted in 1986."). The fact that the US-UK Bilateral Agreement was implemented subsequent to the MDLEA does not transform the application of the MDLEA into an *ex post facto* law. Rather, the US-UK Bilateral Agreement merely provides a mechanism for effectuating the jurisdictional reach already contemplated by the MDLEA.

Overall, Defendants' argument regarding *ex post facto* application of the MDLEA by way of US-UK Bilateral Agreement does not constitute a violation of the prohibition against *ex post facto* laws. *See Reid-Vargas*, at *8 (citing *United States v. Alomia-Riascos*, 825 F.2d 769, 772 (4th Cir. 1987) ("The fact that Barbados consented to enforcement of [the MDLEA's predecessor] against Defendants after the [their vessel] had been boarded and searched simply does not constitute a violation of the prohibition against ex post facto laws.")).

## V.    MOTION FOR RECONSIDERATION ANALYSIS

As mentioned, Defendants have also filed a Motion for Reconsideration (**ECF No. 107**) aimed at the Court's previous Opinion and Order that denied their Second Motion to Dismiss the Indictment. (**ECF No. 106**). For the reasons stated below, the Court **DENIES** Defendants' Motion for Reconsideration. (**ECF No. 107**).[8]

a.  Background

On March 22, 2024, Defendants filed their first Motion to Dismiss, arguing the Government failed to establish jurisdiction over their vessel under the MDLEA. (**ECF No. 32**). This Court, after thorough consideration, denied the motion concluding that the Government had established jurisdiction under the MDLEA by a preponderance of the evidence. (**ECF No. 69 at 18**).

Subsequently, Defendants submitted a second Motion to Dismiss, once again challenging the Government's jurisdiction, this time on constitutional grounds. (**ECF No. 75**). The Court denied this motion as well. (**ECF No. 106**). Among the reasons for the denial, the Court held that the Defendants' constitutional challenge was predicated on disputed facts that lacked support. *Id.* at 5.

Though Defendants fail to divulge the specific procedural rule they stake their Motion for Reconsideration on—or pertinent case law for that matter—Defendants do offer some direction. They state their Motion for Reconsideration is based on "an error of law, requiring reconsideration so as to make Nibbs' district court record in the correct manner, should appeal become necessary." (**ECF No. 107 at 4**). Moreover, they offer,

---

[8]    In reaching its decision, the Court has considered Defendants' Second Motion to Dismiss the Indictment (**ECF No. 75**), their Motion for Reconsideration (**ECF No. 107**), and Motion to Clarify (**ECF No. 151**).

"[r]econsideration in a criminal case is available to cure any misapplication of law or the Constitutional protections of the Federal Constitution." *Id.*

This Court is compelled to highlight that Local Rule 7(a) mandates all motions submitted for consideration include supporting authorities.[9] Defendants' Motion for Reconsideration falls woefully short of this requirement. While the Court could justifiably deny the motion on this procedural ground alone, it has, in the interest of thoroughness, considered the substance of Defendants' arguments. *See Disaster Sols., LLC v. City of Santa Isabel, Puerto Rico*, 18-cv-1898, 2020 WL 4037338, at *3 (D.P.R. July 17, 2020), *aff'd*, 21 F.4th 1 (1st Cir. 2021) (denying plaintiff's motion to alter or amend judgment, finding plaintiff's motion "lacks adequate 'citations and supporting authorities,' as required by Local Rule 7(a).").

b.  <u>Legal Standard — Motion for Reconsideration</u>

The Federal Rules of Criminal Procedure lack an explicit provision for motions for reconsideration. *See United States v. Ortiz*, 741 F.3d 288, 292 n.2 (1st Cir. 2014). Instead, the First Circuit applies Federal Rule of Civil Procedure 59(e) to motions for reconsideration "arising in the criminal context." *United States v. Peña-Fernández*, 394 F. Supp. 3d 205, 207 (D.P.R. 2019) (citing *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (applying Rule 59(e) to a motion for reconsideration in a criminal case)).

A motion for reconsideration is considered "an extraordinary remedy which should be used sparingly." *U.S. ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116, 127 (1st Cir. 2013) (internal quotation omitted). Thus, under Fed. R. Civ. P. 59(e), a district court will only alter its original order if a party "evidenced a manifest error of law, if there is newly

---

[9]      Local Rule 7(a) mandate that all motions "submitted for consideration . . include[] **supporting authorities**." *See* L. CV. R. 7(a); (emphasis added).

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 15 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 15

discovered evidence, or in certain other narrow situations." *Fontanillas-López v. Morell Bauzá Cartagena & Dapena, LLC*, 832 F.3d 50, 55 (1st Cir. 2016).

    c.  <u>Analysis</u>

Defendants are far afield from offering a compelling reason why the Court should grant the extraordinary remedy they seek. *See U.S. ex rel. Ge v. Takeda Pharm. Co.*, 737 F.3d 116 at 127. To begin, this Court finds itself in the unusual position of receiving unsolicited guidance from Defendants regarding our understanding of jurisdictional issues under the MDLEA. Defendants note "[t]he Court continues to combine 'jury found facts' with the 'as applied' (factual based) challenge to [the] pretrial determination of subject matter jurisdiction over the vessel and occupants." (**ECF No. 107 at 2-4**). However, as this Court has already explained, in the First Circuit, MDLEA jurisdiction is not "subject matter jurisdiction" as Defendants offer. *Id.* at 3; *see United States v. Chalwell*, 24-cr-00072, 2024 WL 2882952, at *4 (D.P.R. June 7, 2024) ("MDLEA jurisdiction "in this context refers to the enforcement reach of the statute"— "not federal court subject-matter jurisdiction" — "which extends to any federal felony.") (internal citations omitted). In a word, Defendants' attempt at enlightenment is flat wrong.

Next, Defendants have not offered any evidence to put any of the material facts regarding jurisdiction in doubt. *See United States v. Mitchell-Hunter*, at 53. Their self-serving arguments, absent even the sworn statements they have previously pledged to provide, with nothing else, does not raise the specter that there is a legitimate dispute over jurisdictional facts this Court could even weigh in on. *See Mitchell-Hunter*, at 50 (finding no error in MDLEA jurisdictional determination when "[c]onsidering the totality of the evidence presented to the district court . . . as the burden of proof is merely a preponderance").

While the Government shoulders the burden to establish jurisdiction under the MDLEA, as previously discussed, the Government has sufficiently done so with the evidence provided. *See Mitchell-Hunter*, at 51 ("the burden of establishing [MDLEA] jurisdiction remains with the government."). In a nutshell, where the Government has offered evidence in support of their jurisdictional claim and no counterevidence is presented, the matter is effectively unchallenged.

Additionally, Defendants again raise a quasi-constitutional claim, this time accusing the Court of "allowing [] a Ship-Rider agreement [US-UK Bilateral Agreement] [which] has not been authorized by [C]ongress to supersede a [C]ongressional act, in this case [the] MDLEA." (**ECF No. 107 at 2-3**). Initially, their Second Motion to Dismiss argued in part that "the MDLEA's application is not a valid exercise of [C]ongress' authority under the necessary and proper clause, US Const. art 1, section 8, cl. 18." (**ECF No. 75 at 1**).

To begin, Defendants' contention that the US-UK Bilateral Agreement, in effect, is acting to "supersede" the congressionally enacted MDLEA statute is conclusory and offered without explanation or authority. Defendants shoulder the burden of proving that the MDLEA is an impermissible exercise of congressional authority. *See United States v. Marcano-Godoy*, 462 F. Supp. 3d 88, 92 (D.P.R. 2020) (citing *Heller v. Doe by Doe*, 509 U.S. 312, 320 (1993) (holding "[a] statute is presumed constitutional . . . [the] burden is on the one attacking the legislative arrangement to negative every conceivable basis which might support it.")). This Court, following precedent, presumes that Congress enacted the MDLEA in accordance with the Constitution. *Id.* (citing *United States v. Dwinells*, 508 F.3d 63, 70 (2007); *United States v. Candelario-Santana*, 368 F. Supp. 3d 316, 319 (D.P.R. 2019)).

Moreover, their contention that the US-UK Bilateral Agreement supersedes the MDLEA overstates the effect of the maritime counter-narcotics agreement, which is one of numerous cooperative agreements with foreign states that works in conjunction with, rather than supplants, the MDLEA. (**ECF No. 107 at 2-3**).[10]

Notably, the MDLEA derives from Article I of the Constitution, which grants Congress the authority to "define and punish Piracies and Felonies committed on the high seas, and Offences against the Law of Nations." U.S. Constitution Art. I, § 8, cl. 10. Since the founding of the United States, "the ability to effectively prosecute crime committed on the high seas was seen as vital to the interests of the Confederation." *U.S. v. Mariani-Romero*, 678 F. Supp. 3d 266, 268 (D.P.R. 2023) (citing Adam H. Kurland, *First Principles of American Federalism and the Nature of Federal Criminal Jurisprudence*, 45 Emory L.J. 1, 23-4 (1996)). In fact, the Define and Punish Clause is the "only specific grant of power to be found in the Constitution for the punishment of offenses outside the territorial limits of the United States." *See U.S. v. Trapp*, 16-cr-0159, 2017 WL 2821904, at *4 (D.P.R. May 11, 2017), *report and recommendation adopted*, 16-cr-0159, 2017 WL 2821873 (D.P.R. June 28, 2017) (citing *e.g.*, *United States v. Ledesma-Cuesta*, 347 F.3d 527, 531–32 (3d Cir. 2003) ("Congress had authority to enact" the MDLEA's predecessor statute "pursuant to its constitutional power" under the Define and Punish Clause); *United States v. Moreno-Morillo*, 334 F.3d 819, 824 (9th Cir. 2003) ("Congress ... was acting within its constitutionally conferred authority when it passed the MDLEA," specifically, "Article I, Section 8, Clause 10")).

---

[10]     "The United States has concluded over forty counter-narcotics agreements around the world, thirty-four of which are with partner nations in the Western Hemisphere." Maritime Counter-Narcotics Agreements, 99 INT'L L. STUD. 354, 355 (2022) (Staff Judge Advocate, U.S. Southern Command) (citing U.S. Dep't of Homeland Security, Fiscal Year 2020 Report to Congress, Counter-Drug Operations 6 (Aug. 14, 2020)).

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 18 of 22

Crim. No. 24-cr-0072 (MAJ)                                                      Page 18

The First Circuit Court of Appeals has consistently declined to mandate a nexus requirement in MDLEA prosecutions. *See United States v. Rodríguez-Durán*, 507 F.3d 749, 761-62 (1st Cir. 2007) ("We have previously held that the MDLEA does not contain such a nexus requirement; the flag nation's consent to jurisdiction is sufficient"); *see e.g*., *United States v. Salazar-Realpe*, 15-cr-0087, 2015 U.S. Dist. LEXIS 80016 *7 (D.P.R. June 18, 2015) (holding that the "MDLEA is constitutionally valid under the Define and Punish Clause"); *United States v. Ramírez*, 19-cr-0117, 2019 U.S. Dist. LEXIS 189135 *4-5 (D.P.R. Oct. 28, 2019) (holding that the "MDLEA  does not exceed Congress' power under the Define and Punish Clause"); *United States v. Díaz-Doncel,* 990 F. Supp. 2d 163, 164 (D.P.R. 2014) (holding that the MDLEA is a "constitutional exercise of Congress' power under the Felonies Clause"); *Singleton v. United States*, 789 F. Supp. 492 (D.P.R. 1991) ("there is nothing offensive to the Constitution nor inconsistent with international law for the United States to assert jurisdiction over its own vessel in international waters to prohibit the activity prescribed by this statute, nor for the United States to do the same over a vessel the flag country of which has ceded jurisdiction to the United States.").

In the present case, even if the Court took Defendants' version of the facts as true, the effect on the MDLEA jurisdiction question would remain unchanged. The BVI government waived their authority over Defendants and their vessel as the Secretary of State Certification establishes. (**ECF No. 33-1 at 3**). This allowed U.S. authorities to board and arrest Defendants for illegally smuggling controlled substances in contravention of the MDLEA. This is consistent with established principles that the MDLEA is a constitutional exercise of Congress' power under the Define and Punish Clause. *See United States v. Díaz-Doncel*, 990 F. Supp. 2d 163, 164 (D.P.R. 2014).

Furthermore, Defendants' contention regarding the timing of international agreements vis-à-vis the MDLEA's enactment is a non-sequitur.[11] Our Constitution does not demand that Congress possess a crystal ball to anticipate future treaties when crafting legislation. The MDLEA's validity flows from Congress's enumerated powers, not from any specific international accord. *United States v. Escalona-Reid*, 20-cr-0203, 2022 WL 17541746, at \*3 (D.P.R. Dec. 8, 2022).

Moreover, to the extent Defendants are questioning the Executive branch's authority to conduct foreign relations and enter into international agreements, such as the US-UK Bilateral Agreement, this too is off the mark. The suggestion that the Executive's implementation of international agreements to effectuate the MDLEA's provisions represents an unconstitutional encroachment on legislative power conflates the roles of these two tripartite branches of the federal government. *See Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 414 (2003) (cleaned up) (the "President has authority to make executive agreements with other countries, requiring no ratification by the Senate or approval by Congress.").

In a somewhat ironic turn, in evaluating Defendants' Motion for Reconsideration, to identify if the Court itself has misapprehended the nature of Defendants' previous arguments, Defendants seemingly miscomprehend the Executive's Article II authority to engage with foreign powers. *See Caribbean Mgmt. Grp., Inc. v. Erikon LLC*, 966 F.3d 35, 45 (1st Cir. 2020) (quoting *Palmer v. Champion Mortg.*, 465 F.3d 24, 30 (1st Cir. 2006) (noting as "long as the district court has 'misapprehended some material fact or point of law,' a motion for reconsideration is rarely 'a promising vehicle for revisiting a party's case

---

[11]     Defendants contend, "The MDLEA was enacted long before both The Convention against Illicit Traffic Treaty and the UKOT treaty; therefore was not enacted pursuant to the Necessary and Proper Clause to effectuate those agreements." (**ECF No. 107 at 4**).

and rearguing theories previously advanced and rejected.'"); *see also Am. Ins. Ass'n v. Garamendi,* 539 U.S. at 414, 429 (internal citations and quotations omitted) (under Article II of the Constitution, the President shoulders the "vast share of responsibility for the conduct of our foreign relations," thereby possessing "independent authority in the areas of foreign policy and national security" and "congressional silence is not to be equated with congressional disapproval.").

The US-UK Bilateral Agreement recognizes this as competent evidence in federal courts without needing further authentication.[12] The agreement states in relevant part:

> NOTE BY THE DEPARTMENT OF STATE Pursuant to Public Law 89—497, approved July 8, 1966 (80 Stat. 271; 1 U.S.C. 113)— ". . .the Treaties and Other International Acts Series issued under the authority of the Secretary of State shall be competent evidence . . . of the treaties, international agreements other than treaties, and proclamations by the President of such treaties and international agreements other than treaties, as the case may be, therein contained, in all the courts of law and equity and of maritime jurisdiction, and in all the tribunals and public offices of the United States, and of the several States, without any further proof or authentication thereof.").

*Agreement between the Government of the United States of America and the Government of the United Kingdom of Great Britain and Northern Ireland Concerning Maritime Matters*, U.S.-U.K., July 13, 1998, T.I.A.S. No. 00-1030. The immediately appearing portion of the US-UK Bilateral Agreement directly addresses and refutes Defendants' contention that the agreement impliedly needed to have been "ratified and, or, codified by Congress" to carry with it the force of law. *See* U.S.-U.K. Maritime Matters Shiprider, July 13, 1998, T.I.A.S. No. 00-1030.

---

[12]    Formally titled the "Maritime Matters Shiprider in the Caribbean and Bermuda Agreement between the United States of America and the United Kingdom of Great Britain and Northern Ireland," signed at Washington on July 13, 1998.

Case 3:24-cr-00072-MAJ    Document 156    Filed 08/12/24    Page 21 of 22

Crim. No. 24-cr-0072 (MAJ)                                                    Page 21

In short, Defendants have not shouldered their burden in proving that the MDLEA is an impermissible exercise of congressional authority, nor have they shown that the U.S.-U.K. Bilateral Agreement represents an impermissible act of executive power. *See United States v. Marcano-Godoy*, 462 F. Supp. 3d 88 at 92 (citing *Heller v. Doe by Doe*, 509 U.S. 312 at 320).

### d. Motion For Reconsideration Ruling

In light of the foregoing analysis, this Court finds that Defendants have failed to present any compelling reason to reconsider our previous determination regarding jurisdiction under the MDLEA. Defendants' arguments, lacking in both factual and legal foundation, do not disturb the established principles that affirm the MDLEA as a constitutional exercise of Congress's power under the Define and Punish Clause.

Central to their Motion for Reconsideration, Defendants have failed to demonstrate a manifest error of law, present newly discovered evidence, or any other rare scenario that would justify granting "sparingly" afforded Rule 59(e) relief. *See Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) ("Rule 59(e) relief is granted sparingly"). Accordingly, Defendants' Motion for Reconsideration is **DENIED**. (**ECF No. 107**).

## VI.    CONCLUSION

For the reasons stated above, the Court finds that the U.S. Department of State Certification provided by the Government conclusively shows that the Government of the British Virgin Islands waived its authority to exercise jurisdiction over Defendants, their vessel, and cargo and authorized the United States to enforce its laws against the crew members. (**ECF No. 33-1 at 3**).

Accordingly, the Court finds the Government has established MDLEA jurisdiction under 46 U.S.C. § 70502(c)(1) to prosecute Defendants for alleged violations of the MDLEA. Consequently, the Government's Motion for Pre-Trial Determination of Jurisdiction is hereby **GRANTED** (**ECF No. 71**). Finally, as previously discussed, Defendants' Motion for Reconsideration is **DENIED**. (**ECF No. 107**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 12th day of August, 2024.

<u>**/s/ María Antongiorgi-Jordán**</u>
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**