# THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| **UNITED STATES OF AMERICA,**  *Plaintiff*,  v.  **AKINDE THOMAS CHALWELL,** *et al.*,  *Defendants*. | Criminal No. 24-cr-00072 (MAJ) |

## OPINION AND ORDER

### I.   Introduction

On February 28, 2024, a grand jury indicted Akinde Thomas Chalwell, Jerome Nibbs, and Jose Acosta ("Defendants") for various maritime drug trafficking offenses, including possession of cocaine with intent to distribute, aboard a vessel subject to U.S. jurisdiction.[1] (**ECF No. 11**). Pending before the Court is the Government's Motion Requesting Order, wherein the Government seeks a ruling from the Court that "the United States is not required to call as witnesses all law enforcement officers involved with the Chain of Custody" of the cocaine allegedly seized from Defendants.[2] (**ECF No. 155**). Defendant Nibbs filed a response, to which the Government replied. (**ECF Nos. 159, 162**). For the reasons stated hereafter, the Government's motion is **GRANTED**.

---

[1] The charges include: conspiracy to possess with intent to distribute cocaine aboard a vessel subject to the jurisdiction of the United States under 46 U.S.C §§ 70503(a)(1) and 70506(b), 21 U.S.C. § 960(b)(1)(B); possession with intent to distribute cocaine aboard a vessel subject to the jurisdiction of the United States under 46 U.S.C. § 70503(a)(1) and 21 U.S.C. § 960(b)(1)(B); and jettisoning property subject to forfeiture under 21 U.S.C. § 881(a) from a vessel subject to the United States, aiding and abetting, under 46 U.S.C. § 70503(a)(2) and 18 U.S.C. § 2. (**ECF No. 11**).

[2] The Government attaches the purported chain of custody documents from the U.S. Coast Guard, as well as images of the seized drugs to its motion. (**ECF Nos. 155-1, 155-2**).

## II.   Background

On June 16, 2022, Defendants were interdicted by the U.S. Coast Guard approximately 25 nautical miles from St. Thomas, U.S. Virgin Islands. (**ECF No. 1-1 at 2 ¶ 7**). Defendant Chalwell, claiming to be the master of the boat, asserted British Virgin Islands nationality for himself and the vessel. (**ECF No. 1-1 at3 ¶ 10**). While the U.S. Coast Guard was awaiting the waiver of jurisdiction pursuant to the bilateral agreement with the United Kingdom's Overseas Territory, the Government alleges Defendants and the seized drugs were "transferred between U.S. Coast Guard assets multiple times until the U.S. Coast Guard received notice of the consent." (**ECF No. 155 at 1**). More specifically, during the interim 36 days, the seized drugs were "transferred from U.S. Coast Guard Cutter [] *Heriberto Hernández* to the following U.S. Coast Guard [C]utters, *Reliance*, *Donald Horsley*, *Joseph Tezanos*, and *Joseph Doyle* on multiple occasions[.]" *Id*. at 3. Defendants and the seized drugs were thereafter transferred to law enforcement in Puerto Rico on July 22, 2022. *Id*. at 2.

The United States seeks a ruling that would allow it to present two witnesses from the U.S. Coast Guard for purposes of the chain of custody. *Id*. "Specifically, these witnesses are for the U.S. Coast Guard cutter involved in the interdiction and acquisition of the seized drugs, and the last cutter involved with the offload of the seized drugs in Puerto Rico." *Id*. "These two witnesses will testify, among other things, to the protocols involved with the Chain of Custody, to include the forms used, how they are prepared, and the witnesses' familiarity with these forms, especially with the ones used in this case." *Id*. The Government maintains that bringing "witnesses from [the] four additional U.S. Coast Guard cutters would be unduly burdensome and have a severely negative impact

[on] U.S. Coast Guard operations, as the respective witnesses fill critical positions and are dispersed across the United States." *Id.* at 5.

That said, the Government states that for the remainder of the chain of custody not involving the U.S. Coast Guard, it will call at least five different witnesses, one for each "stage[] in which the drugs were transferred from the agencies involved to the time they were transferred to the DEA Laboratory in Miami, Florida." *Id.* at 2, 4.

In response to the Government's request, Defendant argues that the chain of custody documents are testimonial such that their introduction—without the witnesses who prepared them—would violate his Sixth Amendment right to confrontation. (**ECF No. 159 at 3**). As such, he maintains that the Government must demonstrate that the witnesses are unavailable to testify. *Id.* at 4. Defendant also argues that because "the drugs were not always transferred with" Defendants, "[a]ny officer test[ifying] about the chain of custody of the drugs that were not present during the transfers is hearsay." *Id.*

### III. Applicable Law and Analysis

Under Federal Rule 901(a), "in order to satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." *United States v. Espinal-Almeida*, 699 F.3d 588, 609 (1st Cir. 2012) (citing Fed. R. Evid. 901(a)). "This does not mean that the proponent must rule out all possibilities inconsistent with authenticity, rather the standard for authentication, and hence for admissibility is one of reasonable likelihood." *Id.* (internal citations and quotations omitted); *see also United States v. Barrow*, 448 F.3d 37, 42 (1st Cir. 2006) ("The district court must determine if there is a reasonable probability that the evidence is what it is purported to be.") (internal citation and quotations omitted)).

"Evidence is properly admitted if it is readily identifiable by a unique feature or other identifying mark." *Espinal-Almeida*, 699 F.3d at 609 (internal citation and quotation omitted). "If that is not the case, or if the evidence is susceptible to alteration, a testimonial tracing of the chain of custody is needed." *Id.* (internal citation and quotations omitted). "The purpose of testimonial tracing is to render it improbable that the original item either has been exchanged with another or has been tampered with or contaminated." *United States v. Abreu*, 952 F.2d 1458, 1467 (1st Cir. 1992); *United States v. Rosado-Cancel*, 13-cr-0731, 2015 WL 1968508, at *4 (D.P.R. May 1, 2015) (citing same). "The time for authenticating evidence is before it is admitted." *Espinal-Almeida*, 699 F.3d at 609.

Notably, "[o]nce this is established, a possible defect in the chain of custody for a certain piece of evidence factors into the *weight* given to the evidence rather than its *admissibility*." *Barrow*, 448 F.3d at 42 (internal citation and quotation omitted) (emphasis added); *see also Asociación De Periodistas De Puerto Rico v. Mueller*, 680 F.3d 70, 79 (1st Cir. 2012) ("[S]o long as the evidence is sufficient to allow a reasonable person to believe the evidence is what it purports to be, it is left to the factfinder to determine what weight it deserves.") (internal citation and quotations omitted). "A defendant can attempt to cast doubt on an exhibit's authenticity. Such an issue, however, is to be resolved by the jury, and not the judge." *United States v. Rodríguez*, 162 F.3d 135, 144 (1st Cir. 1998); *Báez-Figueroa v. Att'y Gen. of Puerto Rico*, 14-cv-1600, 2015 WL 5436910, at *15 (D.P.R. Sept. 15, 2015) (citing same).

While the Court defers ruling on the admissibility of the seized drugs, it finds that the Government is not *required* to produce all law enforcement witnesses involved in the chain of custody for the evidence to be admissible. As the Supreme Court of the United

States noted in *Meléndez-Díaz v. Massachusetts*, "it is the obligation of the prosecution to establish the chain of custody, [however,] this does not mean that everyone who laid hands on the evidence must be called." 557 U.S. 305, 311 n. 1, 129 S.Ct. 2527, 174 L.Ed.2d 314 (2009). In *U.S. v. Barandica,* the First Circuit also rejected "such a mechanical interpretation of Rule 901(a)," finding it would "unnecessarily impose a sometimes-insurmountable burden on the prosecution to produce at trial all persons who had custody of the evidence, even in cases where the authenticity of the evidence was not the issue. 960 F.2d 143 (1st Cir. 1992).[3]

Defendant's arguments to the contrary do not persuade the Court otherwise. As mentioned, Defendant argues that the chain of custody documents are testimonial such that their introduction—without the witnesses who prepared them—would violate his Sixth Amendment right to confrontation. (**ECF No. 159 at 3**). As such, he maintains that the Government must demonstrate that the witnesses are unavailable to testify. *Id.* at 4.

"[T]he threshold question in every [Confrontation Clause challenge] [] is whether the challenged statement is testimonial. If it is not, the Confrontation Clause has no application." *United States v. Cameron*, 699 F.3d 621, 639 (1st Cir. 2012) (internal citations and quotations omitted). If it is, "then the accused shall enjoy the right to be confronted with the witnesses against him." *United States v. Ramos-González*, 664 F.3d 1, 4 (1st Cir. 2011) (cleaned up) (citing U.S. Const. amend. VI). Accordingly, the

---

[3] In this *Barandica*, while not required, the First Circuit did note that the relevant special agent's absence was "hardly inexcusable" given that he was on active duty in Operation Desert Storm. *United States v. Barandica*, 960 F.2d 143 (1st Cir. 1992). Here, as mentioned, the Government maintains that bringing "witnesses from four additional U.S. Coast Guard cutters would be unduly burdensome and have a severely negative impact [on] U.S. Coast Guard operations, as the respective witnesses fill critical positions and are dispersed across the United States." (**ECF No. 155 at 5**). At the pretrial conference, the Government elaborated further and cited the ongoing hurricane season as being an additional barrier to gathering all of the relevant witnesses, as they are needed to help with relief efforts in various locations. Again, while not required, the Court finds this explanation is reasonable.

Confrontation Clause "bars admission of *testimonial* statements of a witness who did not appear at trial unless he was *unavailable* to testify, and the defendant had a prior opportunity for cross-examination." *United States v. Estes*, 985 F.3d 99, 103 (1st Cir. 2021) (internal citations and quotations omitted) (emphasis added).

However, "chain of custody alone does not implicate the Confrontation Clause." *United States v. Johnson*, 688 F.3d 494, 505 (8th Cir. 2012); *United States v. Young*, 510 F. App'x 610, 611 (9th Cir. 2013) ("Nor does the absence of chain-of-custody testimony implicate the Confrontation Clause."). As the Government states in its reply, it is not seeking the "introduction of testimonial statements by non-testifying witnesses." (**ECF No. 162 at 2**). It merely included the chain of custody documents in its motion to show that they "contain the names of [U.S. Coast Guard] law enforcement officers involved with the seizure . . . [some of which may be] potential witnesses for chain of custody purposes." *Id.* (cleaned up). Moreover, the Government does not intend to introduce the documents, only the testimony of some of the names that appear in them. *Id.* at 3. Accordingly, the Confrontation Clause is not implicated.

Defendant's argument that because "the drugs were not always transferred with" Defendants, "[a]ny officer test[ifying] about the chain of custody of the drugs that were not present during the transfers is hearsay" similarly fails. (**ECF No. 159 at 4**). As the Supreme Court explained, "it is not the case [] that anyone whose testimony may be relevant in establishing the chain of custody, authenticity of the sample, or accuracy of the testing advice, must appear in person as part of the prosecution's case." *Meléndez-Díaz,* 557 U.S. 305, 311, n. 1, 129 S.Ct. 2527. Rather, as mentioned, "[i]t is up to the prosecution to decide what steps in the chain of custody are so crucial as to require evidence[.]" *Id.*; *Johnson*, 688 F.3d 494, 505 (8th Cir. 2012) ("The chain of custody does

not have to be perfect. All that is required is testimony that the evidence in question was the same as that involved in the offense and that it is substantially unchanged."). Accordingly, the Government is not *required* to produce all law enforcement witnesses involved in the chain of custody for it to be admissible.[4]

## IV. Conclusion

For the reasons stated above, the Government's Motion Requesting Order is **GRANTED**. (**ECF No. 155**).

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, this 19th day of August, 2024.

*s/ María Antongiorgi-Jordán*
**MARIA ANTONGIORGI-JORDAN**
**UNITED STATES DISTRICT JUDGE**

---

[4] Defendant also briefly raises that "there is a discrepancy between the weights measured by the officers, compared to the weights established at the DEA lab[.]" (**ECF No. 159 at 1**). In response, the Government maintains this discrepancy "is unclear," but that Defendant may be referring to the weight recorded by the U.S. Coast Guard while at sea, which was approximately 90 kilograms of cocaine. (**ECF No. 162 at 1**).
 The Government states "this initial measurement was done at sea in the packaging it [was] seized in, which in this case included three wet black duffel bags that contained the bricks, which [were] additionally wrapped." *Id*. at 2. The lab report recorded a total weight of 75.43 kilograms of cocaine, *without* the packaging or duffel bags. *Id*. The Government therefore argues there are no discrepancies between the weight of the seized drugs. *Id*.
 Regardless, to the extent Defendant is arguing all officers need to be present to establish the chain of custody because of this alleged weight discrepancy, this again, goes to the weight of the evidence, and not admissibility.